UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOLLY MARIE ARIAS DIAZ, | Case No. _____ |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| CREDIT MANAGEMENT COMPANY, | |
| Defendant. | |

## COMPLAINT

NOW COMES Plaintiff, Holly Marie Arias Diaz, by and through her attorney, Sean L. Ruppert., of Kraemer, Manes & Associates LLC, and files this complaint alleging as follows:

### I. Nature of the Action

1. Plaintiff brings this action under the Americans with Disabilities Act ("ADA") 42 U.S.C §12101-12213, the Family and Medical Leave Act ("FMLA"), 29 § U.S.C. 2601 *et. seq*.

### II. Jurisdiction and Venue

2. This action arises under the Americans with Disabilities Act ("ADA") 42 U.S.C §12101-12213, the Family and Medical Leave Act ("FMLA"), 29 § U.S.C. 2601 *et. seq*. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

4. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 24, 2017 under Charge Number 533-2017-01147. *See Exhibit 1.*

5.      Plaintiff was mailed a Notice of Right to Sue from the EEOC on January 24, 2018. The Complaint has been filed within ninety (90) days of the Plaintiff's receipt, thus making this action timely. *See Exhibit 2.*

### III. Parties

6.      Plaintiff, Holly Marie Arias Diaz, is an adult individual who currently resides at 1851 Chessland Street, Apartment 12, Pittsburgh, Allegheny County, Pennsylvania 15205.

7.      Defendant, Credit Management Company, is a Pennsylvania corporation located at 2121 Noblestown Road, Pittsburgh, Allegheny County, Pennsylvania 15205.

### IV. Facts

8.      Plaintiff was hired by Defendant on or about February 16, 2015 and was most recently employed as a Client Liaison.

9.      Plaintiff suffers from Generalized Anxiety Disorder.

10.     During Plaintiff's employment, she received several write-ups for calling off despite the fact that she had supplied medical documentation on each occasion. She also received multiple verbal warnings for "excessive talking."

11.     For the verbal warnings, Vice President Mark Zewleski, and Manager, Heather Tresky, would call Plaintiff into the conference room.

12.     Due to her disability and the frequency of these meetings, Plaintiff developed a nervous tic. This tic manifested itself whenever the conference door opened, and now manifests itself when any door is open.

13.     Due to Plaintiff's medical condition, it was medically necessary for her to take time off work for one (1) or two (2) days per month, on average.

14. Each time Plaintiff requested time off, she called her supervisor, Constance Wade, and e-mailed Ms. Wade summary sheets provided by her doctor. These summary sheets listed her medications, symptoms, and treatment.

15. Due to the receipt of these summary sheets, Ms. Wade was fully aware of Plaintiff's anxiety and panic disorder during her employment with Defendant,

16. Marcy Napier, a colleague of Plaintiff's, continuously bullied her through name calling in the breakroom, as well as altering her work to make it look as if Plaintiff's work was completed incorrectly.

17. Ms. Napier's bulling escalated when she attacked Plaintiff outside of work, in a chance encounter. Unprovoked by the Plaintiff, Ms. Napier berated Plaintiff, grabbed Plaintiff's arm and spit on Plaintiff.

18. Police were called and Ms. Napier was issued a citation. Ms. Napier was convicted of harassment.

19. Plaintiff suffered a panic attack as a result of the incident.

20. When Plaintiff returned to work the following day, Ms. Wade and Mr. Zewleski met Plaintiff as she entered Defendant's building.

21. Ms. Wade and Mr. Zewleski took Plaintiff into a room and told her that they would be talking to Ms. Napier about last night's incident, however, they would move Plaintiff away from Ms. Napier, and "everything should be fine."

22. Plaintiff stated that she could not work for Defendant if Ms. Napier was still employed.

23. Approximately, three hours later, Ms. Napier was terminated and Plaintiff was told by Ms. Wade and Mr. Zewleski that the termination was entirely Plaintiff's fault.

24. Another colleague, Barb, also had regularly bullied Plaintiff. Barb continuously called her ugly and stupid. These incidents contributed to her anxiety and Plaintiff reported the incidents to Defendant, however, nothing was done to remedy the situation.

25. In February of 2017, Plaintiff suffered a severe panic attack while at work. She began shaking and was unable to breathe. Ms. Wade observed Plaintiff's panic attack and commented, "Oh, just a silly panic attack huh? You'll be fine, but I guess you can go home." Ms. Wade then walked Plaintiff to the elevator and left her there, not helping her collect her personal items or helping her to her car when she was in a clear state of distress.

26. On Thursday, March 30, 2017, Plaintiff called off work and went to the Emergency Room as she was suffering from anxiety and a panic attack.

27. Plaintiff called off the next day, March 31, 2017 as she was still suffering from anxiety symptoms.

28. On her way into work on Monday, April 3, 2017, she suffered another panic attack and returned to the Emergency Room.

29. Plaintiff e-mailed Ms. Wade about the incident, but did not receive a response.

30. Once Plaintiff was released from the Emergency Room, she contacted Ms. Wade about the status of her job. Ms. Wade informed her that she would have to return to work in order to find out.

31. Shortly following this conversation, Plaintiff had received messages from her coworkers stating she had been terminated.

32. On April 5, 2017 and April 6, 2017, Plaintiff received an updated letter stating her employment was terminated effective March 30, 2017.

## V. Causes of Action

### COUNT I
### Unlawful Termination in Violation of the ADA and PHRA

33. All other paragraphs of this pleading are incorporated herein as if set forth at length.

34. Defendant constitutes an "employer" within the meaning of the ADA and the PHRA.

35. Plaintiff was an employee with a disability within the meaning of the ADA and the PHRA following her anxiety and panic attacks from February of 2017.

36. Defendant was notified of, and fully aware of, Plaintiff's disability at all times relevant hereto.

37. During Plaintiff's employment, she received several write-ups for calling off despite the fact that she had supplied medical documentation on each occasion. She also received multiple verbal warnings for "excessive talking."

38. For the verbal warnings, Vice President Mark Zewleski, and Manager, Heather Tresky, would call Plaintiff into the conference room.

39. Due to her disability and the frequency of these meetings, Plaintiff developed a nervous tic. This tic manifested itself whenever the conference door opened, and now manifests itself when any door is open.

40. Due to Plaintiff's medical condition, it was medically necessary for her to take time off work for one (1) or two (2) days per month, on average.

41. Each time Plaintiff requested time off, she called her supervisor, Constance Wade, and e-mailed Ms. Wade summary sheets provided by her doctor. These summary sheets listed her medications, symptoms, and treatment.

42. Due to the receipt of these summary sheets, Ms. Wade was fully aware of Plaintiff's anxiety and panic disorder during her employment with Defendant,

43. On Thursday, March 20, 2017, Plaintiff called off work and went to the Emergency Room as she was suffering from anxiety and a panic attack.

44. Plaintiff called off the next day, March 31, 2017 as she was still suffering from anxiety symptoms.

45. On her way into work Monday, April 3, 2017, she suffered another panic attack and returned to the Emergency Room.

46. Plaintiff e-mailed Ms. Wade about the incident but did not receive a response.

47. Once Plaintiff was released from the Emergency Room, she contacted Ms. Wade about the status of her job. Ms. Wade informed her that she would have to return to work in order to find out.

48. Shortly following this conversation, Plaintiff had received messages from her coworkers stating she had been terminated.

49. On April 5, 2017 and April 6, 2017, Plaintiff received an updated letter stating her employment was terminated effective March 30, 2017.

50. Defendant terminated Plaintiff, in whole or in part, because of her disability.

51. Plaintiff's unlawful termination is an adverse employment action.

52. As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

53. Defendant's acts and omissions violated the ADA and the PHRA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor, and against the Defendant, and award any and all available damages, including back pay, front pay, compensatory damages, punitive damages, attorney fees, court costs, pre-judgment and continuing interest, and any other such relief as the Court deems necessary and appropriate.

## COUNT II
### Retaliation in Violation of the ADA and the PHRA

54. All other paragraphs of this pleading are incorporated herein as if set forth at length.

55. Defendant constitutes an "employer" within the meaning of the ADA and the PHRA.

56. Plaintiff was an employee with a disability within the meaning of the ADA and the PHRA following her anxiety and panic attacks from February of 2017.

57. Defendant perceived Plaintiff as having a disability following her multiple panic attacks, beginning in February of 2017.

58. During Plaintiff's employment, she received several write-ups for calling off despite the fact that she had supplied medical documentation on each occasion. She also received multiple verbal warnings for "excessive talking."

59. For the verbal warnings, Vice President Mark Zewleski, and Manager, Heather Tresky, would call Plaintiff into the conference room.

60. Due to her disability and the frequency of these meetings, Plaintiff developed a nervous tic. This tic manifested itself whenever the conference door opened, and now manifests itself when any door is open.

61. Due to Plaintiff's medical condition, it was medically necessary for her to take time off for one (1) or two (2) days per month, on average.

62. Each time Plaintiff requested time off, she called her supervisor, Constance Wade, and e-mailed Ms. Wade summary sheets provided by her doctor. These sheets listed her medications, symptoms, and treatment.

63. Due to the receipt of these summary sheets, Ms. Wade was fully aware of Plaintiff's anxiety and panic disorder during her employment with Defendant.

64. In February of 2017, Plaintiff suffered a severe panic attack while at work. She began shaking and was unable to breathe. Ms. Wade observed her attack and commented, "Oh, just a silly panic attack huh? You'll be fine, but I guess you can go home." Ms. Wade then walked Plaintiff to the elevator and left her there, not helping her collect her personal items or helping her to her car when she was in a clear state of distress.

65. On Thursday, March 20, 2017, Plaintiff called off work and went to the Emergency Room as she was suffering from anxiety and a panic attack.

66. Plaintiff called off the next day, March 31, 2017 as she was still suffering from anxiety symptoms.

67. On her way into work Monday, April 3, 2017, she suffered another panic attack and returned to the Emergency Room.

68. Plaintiff e-mailed Ms. Wade about the incident but did not receive a response.

69. Once Plaintiff was released from the Emergency Room, she contacted Ms. Wade about the status of her job. Ms. Wade informed her that she would have to return to work in order to find out.

70. Shortly following this conversation, Plaintiff had received messages from her coworkers stating she had been terminated.

71. On April 5, 2017 and April 6, 2017, Plaintiff received an updated letter stating her employment was terminated effective March 30, 2017.

72. Defendant terminated Plaintiff, in whole or in part, because it perceived her as being disabled.

73. Defendant's unlawful termination of Plaintiff was an adverse employment action.

74. As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

75. Defendant's acts and omissions violated the ADA and the PHRA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor, and against the Defendant, and award any and all available damages, including back pay, front pay, compensatory damages, punitive damages, attorney fees, court costs, pre-judgment and continuing interest, and any other such relief as the Court deems necessary and appropriate.

## COUNT III

**Failure to Provide Reasonable Accommodations in Violation of the ADA and the PHRA**

76. All other paragraphs of this pleading are incorporated herein as if set forth at length.

77. Defendant constitutes an "employer" within the meaning of the ADA and the PHRA.

78. Plaintiff was an employee with a disability within the meaning of the ADA and the PHRA following her anxiety and panic attacks from February of 2017.

79. Plaintiff was able to perform the essential functions of her job with Defendant with a reasonable accommodation in the form of leave while she was receiving medical care for, and recovering from, the symptoms of her disability, which include but are not limited to severe anxiety and panic attacks.

80. Despite providing supporting medical documentation to Defendant, Plaintiff was nonetheless unlawfully terminated, in whole or in part, because she missed a few days of work while receiving medical care for her panic attacks.

81. Defendant was fully aware of Plaintiff's disability following the panic attack she had while at work in February of 2017, and yet Defendant still refused to provide any accommodations to Plaintiff (including but not limited to a failure to allow her to take reasonable leave to recover from her surgeries).

82. As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

83. Defendant's acts and omissions violated the ADA and the PHRA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor, and against the Defendant, and award any and all available damages, including back pay, front pay, compensatory damages, punitive damages, attorney fees, court costs, pre-judgment and continuing interest, and any other such relief as the Court deems necessary and appropriate.

## COUNT IV

**Failure to Engage in the Interactive Process in Violation of the ADA and the PHRA**

84. All other paragraphs of this pleading are incorporated herein as if set forth at length.

85. Defendant constitutes an "employer" within the meaning of the ADA and the PHRA.

86. Plaintiff was an employee with a disability within the meaning of the ADA and the PHRA following her anxiety and panic attacks from February of 2017.

87. Despite notifying Defendant of her disability, and despite the fact that Plaintiff provided supporting medical documentation to Defendant, Defendant nonetheless unlawfully failed to engage in the interactive process with Plaintiff to determine what reasonable and necessary accommodations she was entitled to.

88. Defendant was fully aware of Plaintiff's disability following her initial panic attack in February of 2017, and yet Defendant still refused to engage in the interactive process with Plaintiff.

89. As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

90. Defendant's acts and omissions constitute an illegal failure to engage in the interactive process, in violation of the ADA and the PHRA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor, and against the Defendant, and award any and all available damages, including back pay, front pay, compensatory damages, punitive damages, attorney fees, court costs, pre-judgment and continuing interest, and any other such relief as the Court deems necessary and appropriate.

## COUNT V

### Interference in Violation of the Family and Medical Leave Act

91. All other paragraphs of this pleading are incorporated herein as if set forth at length.

92. Defendant unlawfully interfered with and intentionally withheld information regarding Plaintiff's lawful right to exercise FMLA-protected leave.

93. Defendant's acts and omissions illegitimately prevented Plaintiff from obtaining benefits she was entitled to under the FMLA.

94. Despite notifying Defendant of her disability, and despite the fact that Plaintiff provided supporting medical documentation to Defendant, Defendant nonetheless unlawfully failed to offer Plaintiff leave under the FMLA.

95. Defendant was fully aware of Plaintiff's disability following her initial panic attack in February of 2017, and yet Defendant failed to inform Plaintiff of available leave under the FMLA.

96. As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

97. Defendant's acts and omissions constitute illegal interference under the FMLA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the Defendants, and award Plaintiff lost wages, front pay as deemed appropriate by the court, liquidated damages, Plaintiff's legal fees, pre-judgment and continuing interest, court costs, and any other such relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Sean L. Ruppert

Sean L. Ruppert, Esq.
Pa. ID. No. 314380
**KRAEMER, MANES & ASSOCIATES, LLC**
U.S. Steel Tower
600 Grant Street, Suite 4875
Pittsburgh, PA 15219
412.626.5550 (p)
412.637.0144 (f)
sr@lawkm.com

*Attorney for Plaintiff*
